UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA,

        - against -

JEFFREY WEBB, *et al.*,

        Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
15-cr-252 (S-3) (PKC)

PAMELA K. CHEN, United States District Judge:

    Defendants Hernan Lopez ("Lopez") and Carlos Martinez ("Martinez") move to sever themselves, and be tried separately, from Defendant Full Play Group S.A. ("Full Play"). Full Play joins the motion. Additionally, in their motion, Lopez and Martinez move to strike certain language from the operative indictment. For the reasons set forth below, the motion to sever and to strike is denied.

## BACKGROUND

    This case arises from an alleged decades-long racketeering conspiracy in which individuals and entities connected with the Fédération Internationale de Football Association ("FIFA") and its constituent confederations and affiliates are charged with engaging in various bribery and kickback schemes. In 2017, this Court presided over the trial of three of those individuals: Juan Ángel Napout ("Napout"), José Maria Marin ("Marin"), and Manuel Burga ("Burga"). These three defendants were tried jointly after the Court denied their and two other defendants' motions to sever their trials. *See United States v. Hawit*, No. 15-CR-252 (PKC), 2017 WL 2271352, at *1 (E.D.N.Y. May 22, 2017). The jury convicted Napout and Marin, while acquitting Burga. (Verdict Sheet as to Napout & Marin, Dkt. 873; Verdict Sheet as to Burga, Dkt. 874.)

    On March 18, 2020, the grand jury returned a 53-count Third Superseding Indictment in this case ("S-3 Indictment") that, among other things, added new defendants, including Lopez,

1

Martinez, and Full Play (collectively, for present purposes, "Defendants"). (Dkt. 1337.) Consistent with earlier indictments, the S-3 Indictment alleges one count of racketeering conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, along with various counts related to wire fraud and money laundering schemes underlying the alleged RICO conspiracy, among other crimes. (*Id.*)

Full Play, a sports media and marketing business incorporated in Uruguay and operating from a principal office in Buenos Aires, Argentina, is charged in the RICO count, as well as counts related to several of the wire fraud and money laundering schemes that are charged as part of the RICO conspiracy. (*See* S-3 Indictment, Dkt. 1337, ¶¶ 19–20, 113–15, 129–35, 146–56.) These schemes allegedly involved the payment of bribes and kickbacks to secure media and marketing rights to: (1) the Copa Libertadores, an annual club-team tournament in South America (the "Copa Libertadores #2 Scheme"); (2) the Copa América, a quadrennial national-team tournament in South America (the "Copa América Scheme"); and (3) various World Cup qualifier and friendly matches contested by South American national teams (the "World Cup Qualifiers/Friendlies Scheme"). (*See id.* at ¶¶ 70–74, 79–85.)

Lopez and Martinez, who were executives at a subsidiary of Twentieth-Century Fox, Inc., (Fox International Channels), are charged as co-conspirators with Full Play in the counts related to the Copa Libertadores #2 Scheme. (*See id.* at ¶¶ 21–22, 129–35.) But they are not charged in any of the other counts in the S-3 Indictment, including the RICO count.

The following is a summary of the charges against Defendants.[1]

| Counts | Charged Crimes | Organization(s) | Scheme | Charged Defs. |
|---|---|---|---|---|
| 1 | RICO Conspiracy | All | All | Full Play |
| 9–21 | Wire Fraud Conspiracy, Wire Fraud, & Money Laundering Conspiracy | CONMEBOL | Copa Libertadores #2 | Full Play Lopez Martinez |
| 27–28 | Wire Fraud Conspiracy & Money Laundering Conspiracy | CONMEBOL | World Cup Qualifiers/ Friendlies | Full Play |
| 29–36 | Wire Fraud Conspiracy, Wire Fraud, & Money Laundering Conspiracy | CONMEBOL/ CONCACAF | Copa América | Full Play |

On July 6, 2020, Lopez and Martinez filed a motion to sever their trials from Full Play's under Rule 8(b)—or, in the alternative, Rule 14(a)—of the Federal Rules of Criminal Procedure ("FRCP"). (Motion for Severance of Defendants ("Lopez & Martinez Motion"), Dkt. 1408.) In the same motion, they also moved to strike certain parts of the S-3 Indictment. (*Id.*) On July 24,

---

[1] The FIFA member organizations identified in the chart are the ones that were either the direct victims of the alleged offenses or the continental organization to which the victim organization belongs. "CONMEBOL," which stands for "Confederación Sudamericana de Fútbol," is a continental soccer confederation for most of South America. "CONCACAF," which stands for "Confederation of North, Central American and Caribbean Association Football," is a continental soccer confederation for North America, Central America, the Caribbean, and three South American countries. The United States and two of its overseas territories, Puerto Rico and the U.S. Virgin Islands, are members of CONCACAF. (S-3 Indictment, Dkt. 1337, at ¶¶ 1, 9–10.)

3

2020, Full Play filed a response joining Lopez and Martinez's motion and asserting additional arguments for severance under Rule 14(a). (Full Play's Response Joining in Co-Defendants' Motion for Severance ("Full Play Response"), Dkt. 1423.) The government opposed (Government's Opposition to Defendants' Motion for Severance ("Gov't Opp."), Dkt. 1429), and Defendants replied (Full Play's Reply in Support of Co-Defendants' Motion for Severance ("Full Play Reply"), Dkt. 1434; Reply in Support of Motion for Severance of Defendants ("Lopez & Martinez Reply"), Dkt. 1435). On September 8, 2020, the Court held oral argument on the motion.

## DISCUSSION

As the Court stated at oral argument, if Defendants were in the same position as the defendants who previously sought severance, the disposition of the present motion would be the same. Here, though, Defendants argue that because Lopez and Martinez are not charged in the RICO conspiracy, the result should be different, and severance is warranted under either Rule 8(b) or Rule 14(a). The Court disagrees.

### I.   Severance Under Rule 8(b)

Rule 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). A "same series of acts or transactions" occurs "where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (internal quotation marks omitted) (quoting *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990)). The determination of proper joinder under Rule 8(b) "turns on what is 'alleged' in the 'indictment.'" *Id.* at 178 (quoting Fed. R. Crim. P. 8(b)). In cases involving RICO charges specifically, "joinder under Rule 8(b) is proper where a defendant, although not charged in the RICO count itself, is charged in substantive offenses which also serve as predicate acts in the RICO

4

count." *United States v. Locascio*, 357 F. Supp. 2d 536, 541 (E.D.N.Y. 2004) (collecting cases); *see also Cervone*, 907 F.2d at 341 (upholding joinder under Rule 8(b) of a defendant not charged in the RICO violation or any of the underlying predicate acts, but was charged with offering a bribe to a co-defendant named in the RICO count and in one of the underlying racketeering acts).

Here, although Defendants Lopez and Martinez are not charged in the RICO count, they are charged with substantive offenses—in connection with the Copa Libertadores #2 Scheme— that are charged as predicate acts for the alleged RICO conspiracy. (*See* S-3 Indictment, Dkt. 1337, at ¶¶ 113–15, 129–35.) Co-Defendant Full Play, who is charged in the RICO count, is also charged in the Copa Libertadores #2 Scheme, as well as in other schemes that serve as predicates for the RICO count. (*See id.* at ¶¶ 113–15, 129–35, 146–56.) Moreover, as alleged in the S-3 Indictment, the Copa Libertadores #2 Scheme, the other schemes in which Full Play is indicted, and the overarching racketeering conspiracy all share common facts: the payment of bribes, made or facilitated by Defendants, to secure media and marketing rights to soccer tournaments organized by FIFA or its constituent confederations, and all relying heavily on banks and wires located in the United States. (*See id.* at ¶¶ 63–66, 70–74, 79–85.) Under the logic of *Cervone* and *Locascio* and their progeny, Defendants are properly joined as participants in the "same act or transaction" or "same series of acts or transactions." *See Cervone*, 907 F.2d at 341; *Locascio*, 357 F. Supp. 2d at 541–42; *see also United States v. Burke*, 789 F. Supp. 2d 395, 398 (E.D.N.Y. 2011) ("In this Circuit[, it] is well-settled that joinder is appropriate pursuant to Rule 8(b) when, as is the case here, a defendant in a RICO indictment is charged only with the predicate acts as independent offenses and not with violating the RICO statute.").

Defendants strongly resist this conclusion, arguing that any connection between the various alleged schemes is insufficient to support joinder. (Lopez & Martinez Motion, Dkt. 1408, at 9–

5

13.) The cases on which they rely, however, are inapposite because none included a racketeering conspiracy charge, which serves here as the common plan and purpose between Defendants and the crimes with which they are charged. *See United States v. Rajaratnam*, 753 F. Supp. 2d 299, 307–16 (S.D.N.Y. 2010) (severing various alleged insider-trading conspiracies into two groups); *United States v. Lech*, 161 F.R.D. 255, 256–58 (S.D.N.Y. 1995) (severing a defendant in a case involving three disparate bribery conspiracies that the government conceded could not be charged as one overall conspiracy); *United States v. Giraldo*, 859 F. Supp. 52, 54–55 (E.D.N.Y. 1994) (severing two alleged drug conspiracies that did not overlap temporally and where only one of four defendants was indicted in both); *United States v. Gentile*, 60 F.R.D. 686, 687 (E.D.N.Y. 1973) (severing a defendant in a case involving three distinct bribery offenses related to three individuals' taxes, where "nothing" in the indictment indicated a common scheme or plan); *see also United States v. Halper*, 590 F.2d 422, 429–31 (2d Cir. 1978) (concluding that it was reversible error under Rule 13 and Rule 8(a) to try an indictment for Medicaid fraud with one for income tax evasion).

Relatedly, Defendants argue that joinder is improper because Lopez and Martinez had no knowledge of or participation in the various other alleged bribery schemes, including the other ones in which Full Play is indicted. (Lopez & Martinez Motion, Dkt. 1408, at 11–13; Lopez & Martinez Reply, Dkt. 1435, at 4–5.) Certainly, knowledge of the other alleged schemes would be "an indicator of whether or not there is a common scheme or purpose" for purposes of joinder under Rule 8(b), *United States v. Ohle*, 678 F. Supp. 2d 215, 225 (S.D.N.Y. 2010), but such knowledge "is not required," *id.* Defendants point to no authority that requires co-defendants joined in an indictment to have had knowledge of all the alleged schemes or conspiracies charged as part of the same RICO enterprise or conspiracy.

6

The RICO context matters. As the Honorable Jack B. Weinstein explained over thirty years ago, when Congress enacted RICO, it expanded the "scope of authority for joining defendants who are alleged to have participated in a common grouping or association," because "the RICO conspiracy charge . . . supplies the sufficient nexus to tie the various defendants and the diverse predicate offenses together." *United States v. Gallo*, 668 F. Supp. 736, 747 (E.D.N.Y. 1987) (citation and internal quotation marks omitted). Indeed, *United States v. Rajaratnam*—a case that Lopez and Martinez heavily rely on—expressly distinguishes itself from a case, like this one, that charges a RICO violation, and rejects the Rule 8(b) standard urged by Defendants in a case such as this one: "[A] construction of Rule 8(b) that required a closer relationship between transactions than that necessary to establish a 'pattern of racketeering activity' under RICO might possibly prohibit joinder in circumstances where Congress clearly envisioned a single trial." *Rajaratnam*, 753 F. Supp. 2d at 311 n.5 (quoting *United States v. Weisman*, 624 F.2d 1118, 1129 (2d Cir. 1980), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370, 1381 (2d Cir. 1989) (en banc)). "[A]lmost by definition, a RICO organization is one whose members share a common criminal purpose; the organization is one grand conspiracy." *Id.* Because the S-3 Indictment sufficiently alleges that the various purported schemes that form the pattern of racketeering activity—including the one in which Lopez, Martinez, and Full Play are all charged—share a common criminal plan or purpose, joinder under Rule 8(b) is proper. *See Locascio*, 357 F. Supp. 2d at 541–42; *see also Hawit*, 2017 WL 2271352, at *7 ("While the Court recognizes that the RICO conspiracy charge in this case may well be unprecedented in its scope and breadth, in denying Defendants Napout's and Marin's motions to dismiss that count, the Court found it to be legally proper, at least at the indictment stage.").

7

Accordingly, the Court finds that the charges brought against Defendants were properly joined pursuant to Rule 8(b) and denies their motion for severance pursuant to that provision.

## II.     Severance Under Rule 14(a)

Notwithstanding proper joinder under Rule 8(b), a defendant may move for severance pursuant to Rule 14(a), which permits a court to sever a defendant's trial "[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant." Fed. R. Crim. P. 14(a); *United States v. Spinelli*, 352 F.3d 48, 54 (2d Cir. 2003). Given the "preference in the federal system for joint trials of defendants who are indicted together," a severance should be granted only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 537, 539 (1993); *see also United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) ("[T]he defendant [must] demonstrate[] that the failure to sever [would] cause[] him substantial prejudice in the form of a miscarriage of justice." (quoting *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991))); *United States v. Ventura*, 724 F.2d 305, 312 (2d Cir. 1983) ("We have held repeatedly that, absent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried."). The prejudice inquiry "is highly fact-specific and must be evaluated on a case-by-case basis." *United States v. Barret*, 824 F. Supp. 2d 419, 433 (E.D.N.Y. 2011) (citing *Zafiro*, 506 U.S. at 539). In addition, even where a defendant shows a risk of prejudice, "less drastic measures" than severance, "such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Id.* at 541.

Here, although Full Play joins Lopez and Martinez's motion, it proffers a distinct basis for severance under Rule 14. Full Play argues that severance should be granted because of a

8

substantial risk of "double prosecution." (Full Play Response, Dkt. 1423; Full Play Reply, Dkt. 1434.) In other words, Full Play contends that "the sheer volume and complexity of the allegations" against it, particularly the RICO charge, compared with the relatively few allegations against Lopez and Martinez, will force Lopez and Martinez to remind the jury "constantly" that the evidence being presented implicates only Full Play. (Full Play Response, Dkt. 1423, at 7.) This, Full Play argues, will create "an inevitable prosecutorial echo-chamber," with Lopez's and Martinez's counsel effectively playing the role of "a second set of prosecutors" to make the case against Full Play. (*Id.* at 2–3.) Lopez and Martinez, on the other hand, argue that they should be tried separately because facing a lengthy trial that would include evidence of an alleged RICO conspiracy in which neither of them is charged with participating creates a substantial risk of spillover prejudice. (Lopez & Martinez Motion, Dkt. 1408, at 15–17; Lopez & Martinez Reply, Dkt. 1435, at 11–15.) Each of these arguments is addressed in turn.

### A. Double Prosecution

Full Play argues that a joint trial with Lopez and Martinez would unfairly subject it to prosecution by both the government and counsel for Lopez and Martinez, who would be constantly reminding the jury that the government's allegations and evidence implicate only Full Play. However, Full Play both mischaracterizes the likely arguments that Lopez and Martinez will make with respect to this evidence and grossly overstates the impact of those arguments on the jury's assessment of Full Play's guilt. Indeed, Full Play's "double-prosecution" theory rests on the fundamentally flawed premise that a reminder that certain evidence pertains only to Full Play is akin to a charge that Full Play is guilty. There is no legal or logical basis for such an assumption.

Full Play points to two recent cases in this district for support: *United States v. Shkreli*, 260 F. Supp. 3d 247 (E.D.N.Y. 2017), and *United States v. Nordlicht*, No. 16-cr-00640 (BMC), 2018 WL 1796542, at *1 (E.D.N.Y. Apr. 16, 2018). (Full Play Response, Dkt. 1423, at 7–9; Full Play

9

Reply, Dkt. 1434, at 1–3, 5–8.)  Neither of these cases is apposite.  In *Shkreli*, the Honorable Kiyo A. Matsumoto granted severance because counsel for Shkreli's co-defendant, Evan Greebel, had made clear that Greebel's defense strategy would be to "argue[] that Shkreli [was] guilty and that Greebel [was], himself, just another victim of Shkreli's fraud."  *Shkreli*, 260 F. Supp. 3d at 256.  Greebel's counsel, moreover, had stated plans "to present evidence . . . that Shkreli lied to Greebel and other attorneys and investors."  *Id.*  Likewise, in *Nordlicht*, the Honorable Brian M. Cogan granted severance because Nordlicht's co-defendant intended to argue that Nordlicht was "guilty as charged," and counsel for Nordlicht's co-defendant had contemplated "the possibility of presenting the jury at closing with a display of emails allegedly incriminating" Nordlicht and other co-defendants.  *Nordlicht*, 2018 WL 1796542, at *2.

Nothing like the scenarios presented in *Shkreli* and *Nordlicht* is likely to happen here.  There is no indication that Lopez and Martinez plan to argue at trial that Full Play was the guilty party while they were merely "unknowing pawn[s]."  *See Nordlicht*, 2018 WL 1796542, at *2; *see also Shkreli*, 260 F. Supp. 3d at 257.  Nor is there any indication that Lopez and Martinez plan to present evidence showing that Full Play is guilty of any charges.  True, in a joint trial with Full Play, Lopez's and Martinez's counsel will seek to remind the jury as often as possible that certain allegations and evidence pertain only to Full Play.  But such reminders do not come close to pointing the finger at Full Play, much less presenting a serious risk that Full Play will not receive a constitutionally fair trial.  *Cf. United States v. Casamento*, 887 F.2d 1141, 1154 (2d Cir. 1989) ("Mere 'fingerpointing' does not require severance.").  Even as to the Copa Libertadores #2 bribery scheme in which all Defendants are charged, there is no indication that Lopez or Martinez intend to argue that Full Play was the lone or main culprit and that they were unwitting pawns in the alleged bribery scheme.  In fact, based on the allegations in the S-3 Indictment, Defendants have

a common interest in asserting that no bribery occurred at all with respect to the Copa Libertadores tournament.  (S-3 Indictment, Dkt. 1337, at ¶ 74 ("The defendants HERNAN LOPEZ and CARLOS MARTINEZ, together with others, relied on loyalty secured through the payment of bribes to certain CONMEBOL officials [by Full Play and others (¶ 73)] in connection with the Copa Libertadores to advance the business interests of Fox beyond the Copa Libertadores . . . .")). At most, just as with the other charges against Full Play, Lopez and Martinez may also argue that certain evidence relating to the Copa Libertadores #2 scheme pertains only to Full Play and not them.  Again, this does not amount to arguing Full Play's guilt or prosecuting the case against it. Full Play's theory, taken to its logical conclusion, would mean that defendants facing varying numbers of charges and with differing levels of culpability could almost never be tried together. This simply is not the case.  *See United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993) ("[The Second Circuit] has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible.").

      Accordingly, the Court denies Full Play's motion for severance pursuant to Rule 14(a).

      **B.**     **Spillover Prejudice**

Lopez and Martinez, who are charged only in connection with the Copa Libertadores #2 Scheme, contend that a joint trial with Full Play would be substantially prejudicial to them because they would be subjected to a lengthy trial that would include evidence of an alleged RICO conspiracy in which neither of them is charged.  They argue that such a trial would confuse a jury and might lead the jury to find them guilty by association.  (*See* Lopez & Martinez Motion, Dkt. 1408, at 15–17; Lopez & Martinez Reply, Dkt. 1435, at 11–15.)

      As an initial matter, there is no merit to the argument that a jury would be confused simply because a trial is long and involves multiple defendants with varying charges.  *See, e.g.*, *United States v. DiNome*, 954 F.2d 839, 842 (2d Cir. 1993) ("There is no support in caselaw or in logic

11

for the proposition that a lengthy trial, a large number and variety of charges, and numerous defendants violate due process without a showing that the issues were actually beyond the jury's competence."); *see also Spinelli*, 352 F.3d at 55 ("Differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." (quoting *United States v. Carson*, 702 F.2d 351, 366–67 (2d Cir. 1983))); *Locascio*, 6 F.3d at 947 ("[J]oint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible."). As the Court previously noted, "juries are routinely required to sort out . . . disparate evidence relating to different crimes committed by different members of a criminal organization." *Hawit*, 2017 WL 2271352, at *8 (collecting cases).

Indeed, the 2017 trial of Napout, Marin, and Burga proves this principle. After a month-long trial—involving the presentation of voluminous and detailed evidence on a wide-ranging, 20-year RICO conspiracy and a multitude of different bribery schemes emanating out of various countries and a sprawling network of soccer confederations and officials across the globe—the jury returned a nuanced and delineated verdict, completely acquitting Burga while convicting Napout and Marin of some, but not all, of the charges against them.[2] (*See* Verdict Sheet as to Napout & Marin, Dkt. 873; Verdict Sheet as to Burga, Dkt. 874.) Notably, a joint trial of Lopez, Martinez, and Full Play would involve the same number of defendants and comparable overlap (and lack of overlap) between the charges against Defendants as the 2017 trial.

---

[2] Burga was charged only in Count One of the Second Superseding Indictment, the racketeering conspiracy charge, and was acquitted. (Dkt. 604; Dkt. 874.) Napout and Marin were both charged in Counts One, Two, Three, Six, and Seven. (Dkt. 604.) Marin was convicted of all those counts, but Napout was convicted only of Counts One, Two, and Six. (Dkt. 873.) Additionally, Marin was individually charged in Counts Four and Five; he was convicted of Count Four but acquitted of Count Five. (Dkt. 604; Dkt. 873.)

Although, here, two of the three defendants, Lopez and Martinez, are not charged in the RICO count, whereas all three defendants in the 2017 trial were, that difference in this particular instance does not justify severance. To start, this is not a case where the alleged RICO enterprise involves predicate offenses that vary substantially in nature. Rather, the alleged underlying offenses are all essentially schemes involving bribery and money laundering. Where the alleged RICO enterprise involves underlying crimes of a similar nature, courts in this circuit have found insufficient prejudice to grant severance, even with respect to defendants not charged in the alleged overarching RICO enterprise. *See United States v. Stone*, No. 05-CR-401 (ILG), 2006 WL 436012, at \*4 (E.D.N.Y. Feb. 22, 2006) (denying Rule 14 severance to a defendant charged only with attempted murder and use of a firearm, but joined with others charged in a RICO enterprise involving alleged murder, assault, and numerous firearm violations); *United States v. Santiago*, 174 F. Supp. 2d 16, 21–23 (S.D.N.Y. 2001) (denying Rule 14 severance to defendants charged only in a narcotics conspiracy but joined with other defendants charged in a RICO enterprise involving alleged extortion, narcotics trafficking, murder, attempted murder, and robbery); *see also United States v. DeVillio*, 983 F.2d 1185, 1187, 1192–93 (2d Cir. 1993) (upholding the denial of severance to defendants charged in only some of the commercial burglary offenses underlying RICO and RICO conspiracy charges).

Lopez and Martinez point out several cases where defendants not charged in a RICO enterprise were severed under Rule 14 from defendants who were, due to the risk of spillover prejudice. *See DiNome*, 954 F.2d at 844–45; *Burke*, 789 F. Supp. 2d at 399–400; *Loscasio*, 357 F. Supp. 2d at 544–45; *United States v. Bellomo*, 954 F. Supp. 630, 650–51 (S.D.N.Y. 1997). These cases are inapposite, however, because, unlike here, the defendants in those cases who were severed faced charges that differed significantly in nature and severity from those of the RICO

13

defendants.  For example, in *DiNome*, the Second Circuit concluded that two defendants who faced only bribery and mail and wire fraud charges should have been severed because they were substantially prejudiced by evidence of the RICO enterprise, which allegedly had committed "vicious murders, loansharking, auto theft, pornography, and firearms trafficking."  *DiNome*, 954 F.2d at 844.  No such disparity in type or gravity exists here.  The other cases on which Lopez and Martinez rely are similarly distinguishable.  *See Burke*, 789 F. Supp. 2d at 399–400 (severing a defendant facing only witness tampering charges from co-defendants facing a RICO charge involving murders, robberies, and assaults); *Loscascio*, 357 F. Supp. 2d at 544–45 (severing three defendants unassociated with members of the Mafia charged under RICO); *Bellomo*, 954 F. Supp. at 636, 650–51 (severing defendants facing only gambling charges from co-defendants facing a RICO charge involving, among other things, murder and extortion).

Additionally, Lopez and Martinez's claim of substantial prejudice is premised partly on the view that there is a lack of substantial overlapping evidence—in other words, that much of the evidence that would be admissible in a joint trial would not be admissible in a trial of just the two of them.  With the benefit of having presided over the 2017 trial, the Court finds this view unconvincing.  As already described, the various alleged schemes share common facts, including common types, methods, and means of criminal conduct.  More importantly, the various schemes are fundamentally interconnected, and regardless of whether the government has to prove one scheme or a pattern of several schemes, a significant portion of the trial will have to be spent establishing a common foundation of facts "necessary to complete the story of the crime[s] on trial."  *See United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)).  For example, at the 2017 trial, considerable time was spent adducing evidence regarding the structure and operation of FIFA, the hierarchy of FIFA

14

officials in each of the confederations and constituent organizations and affiliates, the bidding and contracting process for media and marketing rights for international professional soccer events, the numerous different FIFA and other confederation soccer officials involved in those processes, the ethical code to which all FIFA officials are bound, the different media and marketing companies and executives who both competed and collaborated in the world-wide professional soccer market, the flow of bribe payments among various entities—many of which emanated out of the same group of media/marketing companies, such as Full Play, and were negotiated by the same marketing company executives (*e.g.*, Alejandro Burzaco and Hugo and Mariano Hinkis)— the means used to conceal those payments, and the harm caused by the bribery schemes to FIFA and its constituent soccer confederations. Thus, even though Lopez and Martinez are charged in only a subset of the counts in which Full Play is charged, the Court is not convinced, based in part on recent, comparable experience in this case, that severance would meaningfully streamline either trial in such a way as to substantially reduce the risk of prejudice. Rather, the Court is convinced that severing Lopez and Martinez's trial from that of Full Play will result in the unwarranted, duplicative presentation of evidence at two trials.

Finally, to the extent that Lopez and Martinez would be prejudiced by the introduction of certain evidence, there are remedies short of severance that can mitigate or eliminate any potential prejudice, such as evidentiary limitations and curative instructions. *See Zafiro*, 506 U.S. at 539 ("[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."); *United States v. Matera*, 489 F.3d 115, 121 (2d Cir. 2007) (noting that evidence related to proving an element of a RICO offense is nonetheless subject to balancing under Federal Rule of Evidence 403). Indeed, judging by the verdicts reached by the jury as to Napout, Marin, and Burga, such remedies proved effective in the 2017 trial. (*See, e.g.*, Jury Instructions, Dkt. 872,

15

at 14 (instructing jurors that they must consider each count separately and evaluate the evidence against each defendant individually).)

The Court denies Lopez and Martinez' motion for severance pursuant to Rule 14(a).

### III. Striking Portions of the Indictment

Defendants argue that, if their severance motion is granted, those allegations in the S-3 Indictment relating to the severed counts should be struck from the indictment, as surplusage, for purposes of trial. (Lopez & Martinez Motion, Dkt. 1408, at 17–20.) FRCP 7(d) provides that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). However, because Defendants' severance motion is denied, the requested striking of paragraphs and allegations from the S-3 Indictment is not warranted or appropriate. Even to the extent that removing allegations in the S-3 Indictment unrelated to Full Play, Lopez, and Martinez is appropriate, the Court finds it unnecessary to do so, since, at trial, the indictment will not be provided to the jury, no allegations from the indictment will be read or provided to the jury, and the jury will only be advised of and instructed on the counts in which Defendants are charged.

### CONCLUSION

The motion to sever and to strike certain parts of the Third Superseding Indictment is denied. Defendants Lopez, Martinez, and Full Play shall proceed jointly to trial.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: November 1, 2020
      Brooklyn, New York